Case 63—PROSECUTION AGAINST JOE LANDRUM FOR MAN-
    SLAUGHTER, OCT., 11.

## Landrum v. Commonwealth.

Appeal from Laurel Circuit Court.

H. C. FAULKNER, Circuit Judge.

Defendant convicted and appeals.    Reversed.

Homicide—Aider and Abettor—Intent—In order to aid or abet
    another in a crime, one must share the intent or purpose of the
    principal. If two or more acting independently assault an-
    other, and one of them inflicts a mortal wound the other is

not guilty as an aider and abettor. An aider and abettor is a partner in the crime, the chief ingredient of which is always intent.

GEORGE C. MOORE, WALKER MOORE, SAM C. HARDIN and B. B. GOLDEN, for appellant.

N. B. HAYS, Atty. Genl. and C. H. MORRIS, for appellee. No briefs.

OPINION BY JUDGE O'REAR—Affirming.

Appellant was convicted of manslaughter under an indictment charging him and George Ward and Frank Ward with the murder of Jeff Goff. In view of the conclusion we have reached in the case, and of the grounds of this decision, it becomes necessary to detail the particulars of the homicide. Appellant conducted a grocery store and restaurant in the little mining town of Pittsburg, Laurel county. About 11 o'clock at night of April 15, 1905, some parties, particularly Bill Miller, Frank Ward, and possibly George Ward, engaged in a shooting affray in and about appellant's place. At the time the shooting began appellant was asleep in a rear room, sitting in his chair, and had been for some hours before. We think the proof shows that he was more or less drunk at the time. There was some words passed between Bill Miller and the Wards, all more or less drunk, between whom there was also some feeling owing to a brother of Miller's having, about a month previous, shot and killed a brother of the Wards. Frank Ward was armed with a 45-caliber pistol. Bill Miller was armed with a 38-caliber pistol, and George Ward with a 38-caliber, or smaller. Frank or George Ward opened the fight by firing upon and wounding Bill Miller, who, though desperately wounded, returned their fire vigorously. They all passed out of the building where the fight began, onto the street, where the firing was kept up for a while. Both Bill Miller and Frank Ward fired into the room after

they went out. Some one, we think the proof shows satisfactorily it was Frank Ward, fired through a window into the room where Jeff Goff was staggering about drunk, unarmed and harmless. There is no pretense that either of the Wards or Miller was attempting to injure Goff, or either knew of his presence. During the melee appellant, awakened from his slumber, rushed into the store room where Goff was, and into which somebody was shooting, grabbed a 32-caliber pistol from behind his counter and began to return the fire being directed into the room. He saw Jeff Goff staggering about the room, and probably shot at him, and we think the proof shows, struck him in the hands and lower arms with several bullets from his pistol. But none of these wounds were serious—certainly none a mortal wound. While appellant was blazing away into the fight indiscriminately, or even it may be said for the purpose of this decision, firing at Goff, a pistol shot from the outside came through the window of that room and entered Goff's body from behind, pierced his heart and came out in front. This bullet was a 45-caliber. He fell forward, dead of course, and was not removed till next morning, after a number of witnesses had examined his position and wounds. There is no evidence of any previous agreement or conspiracy between appellant and the Wards to shoot or injure either Goff or Bill Miller, or anybody else. There is no evidence that they had been together, or communicated with each other. There is no evidence that appellant knew Frank Ward was shooting at anybody, or was outside the building, or about it. Whatever may have been the purpose or motive of the Wards towards Bill Miller, or any other person present, there was not a scintilla of proof that appellant knew of it or shared it to any extent. After the shooting was all over appellant said that he had killed Goff. In this there is no sort of doubt but that

he was mistaken. He was still drunk, and may have then thought that he had killed him and, for aught we know, may have intended to kill him while shooting at him. Still, he did not kill him. Nor did the wound inflicted by him upon Goff contribute to the latter's death. The shot that killed Goff beyond all possibility of dispute or doubt, so far as the evidence in this record stands, was the one fired from the outside of the building from a 45-caliber pistol. Appellant was not outside the building, and did not have a 45-caliber pistol, or any other weapon except the 32-caliber pistol. At least the record now before us shows none other. Let it be admitted that appellant shot at Goff and wounded him, intending to kill him, and shot not in his own or another's defense; that he not only intended to kill Goff but believed that he had done so, and said so. Still he is not being tried for shooting and wounding, but for killing, or for aiding or abetting the one who did kill Goff.

The indictment contained several counts. It charged the three men, George Ward, Frank Ward, and Joe Landrum (appellant) with having shot and killed and murdered Jeff Goff; it then charged that Frank Ward, as principal, shot and killed him, while Joe Landrum and George Ward aided and abetted it; it charged alternately George Ward and Joe Landrum as principals, and the others as aiders and abettors. The court in the instructions, submitted to the jury all these phases of the case, except the conspiracy charge. The instructions submitted, too, that they were guilty if either shot at Bill Miller feloniously and without real or probable cause, in their own defense or the defense of another, and thereby shot and killed Jeff Goff, and that the one or ones aiding and abetting were also guilty according to their motives. Not only is there no evidence in this record tending to show that appellant killed Jeff Goff, but there is none tending to show that he, in con-

templation of law aided or abetted the person who did kill him.

The court told the jury in the instructions that if Frank Ward or George Ward shot and killed Jeff Goff, whether shooting at him, or while shooting at Bill Miller, if such shooting was not in their own or another's defense, and if appellant was present, and willfully and feloniously aided, abetted, assisted, encouraged, counseled, advised, or commanded them, or either of them, to so shoot, that the appellant was guilty as principal, and directed the manner of fixing his punishment. We give only the substance of the instructions, the aiding and abetting feature being the one under examination. Technically, and as far as it goes, the instructions as to the aider and abettor are correct. But to the lay mind it is apt to mislead. Would the jury not suppose that to engage on the same side, shooting at the same man or men and apparently making a common fight with the principal, Frank Ward, would satisfy at least so much of the instruction as said if he aided, assisted, or encouraged the principal in the shooting he was guilty as an aider or abettor? Yet that is not enough. For to aid and abet another in a crime one must share the intent or purpose of the principal. If two or more acting independently assault another, and one of them inflicts a mortal wound, the other is not guilty as an aider and abettor. An aider and abettor is a partner in the crime, the chief ingredient of which is always intent. There can be no partnership in the act where there is no community of purpose or intent. In Ward v. Commonwealth, 14 Bush, 233, the defendant was charged as an aider and abettor to John Biggs, in a robbery. The instruction was, if Ward was sufficiently near to the broken house with the felonious intent to render aid and assistance to the parties who did enter, if needed, he was in law a principal in the commission of the offense. And so he would have been if his intent was to render

assistance to Biggs. The court reversing the judgment said the instruction should have been modified so as to inform the jury that the accused should not be convicted as an aider and abettor unless the felonious intent was to render assistance in the offense charged. In Omer v. Commonwealth, 95 Ky. 353, 15 Ky. L. R.. 694, 25 S. W. 594, appellant was one of a posse who went to rescue a young man from the custody of others, not officers. Some of the posse shot and killed one of the other party, not in self-defense. The appellant was tried and convicted as an aider and abettor. The court said that the appellant had said nothing and did nothing at the time of the immediate killing. Nevertheless, if by his presence he gave aid or encouragement to the others engaged in the fight, he is guilty of murder, if they were so guilty, provided he was there in pursuance of a mutual understanding to carry out some unlawful purpose. His presence alone, without such an understanding, did not make him responsible for the acts of the others. "Therefore," the court concluded, "the case against him rests upon the intent with which he was present, to be gathered from the proof and all the circumstances in the case." To constitute one an aider and abettor, sometimes called a principal in the second degree, it is essential that he be present, actually or constructively, at the commission of the crime, and participate in it, sharing the criminal intent of the principal in the first degree. Burrell v. State, 18 Tex. 713; Martin v. State, 89 Ala. 115, 8 South, 23, 18 Am. St. Rep. 91; Adams v. State, 65 Ind. 565; Commonwealth v. Ryan, 154 Mass. 422, 28 N. E. 289; State v. Hildreth, 31 N. C. 440, 51 Am. Dec. 369, note. The aider and abettor may be guilty in a different degree from the principal, each to be held to account according to the turpitude of his own motive.

Judgment reversed, and cause remanded for a new trial, under proceedings consistent herewith.