## Gill et al. v. Commonwealth.

(Decided September 30, 1930.)

H. M. BENTON and D. W. DAVIES for appellants.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Reversing.

The appellants, Eric Gosney and John Gill, upon their joint trial were convicted of manslaughter, and both sentenced to ten years in the penitentiary. The scene of the homicide was a so-called soft drink stand at the edge of Newport, which had formerly been conducted as a licensed saloon. It occurred during the evening of November 11, 1928.

The deceased, Bill Ewing, came in boisterously drunk and took a few more drinks. He was a large and powerful man. Eric Gosney was employed as a bartender, and Ewing asked where he was and was told he had gone after some change. He returned after a little while with Ed Faulz, and Ewing called Faulz into a small adjoining room, and there told him that two weeks before he would have killed him if he had found him, but he had found out better, and he could "take that as an apology or leave it." Ewing observed that "he was mad now and would kill somebody before he went out of there," and turned and rammed his fist through the plaster board wall.

Coming back into the main room, Ewing picked up a black-jack and slammed it on the bar, announced that he was boss of the counter, and walked around and slapped John Gill on the back with it and made him buy him a drink. Gill was a night watchman at a nearby coal yard. Pursuing his bull-dozing course, Ewing went over to Stewart Gosney, who was sitting on a stool with his arms on the counter and his head on his arms. He pushed Stewart around, though Stewart asked him to let him alone as he was sick (he was shown to have been drunk). Stewart, losing his balance, grabbed Ewing's coat lapel and tore it. This infuriated him, and he knocked Stewart off the stool into the middle of the room, then went to him and several times lifted him off the floor and then dropped him, or, as some witnesses say, lifted him up and knocked him back with his fist, and also kicked him. Stewart testified that when he was knocked from the stool he became insensible and knew nothing of what subsequently happened. He suffered a two-inch cut over the eye and his face and head were bloody and bruised.

While he was attacking Stewart, some one called Ewing's sister-in-law, Katherine Murphy, who was upstairs in the apartment of Klein, the proprietor. She

took Stewart's head in her lap and tried to stop Ewing. In the meantime, Klein had tried to rescue Stewart, but was knocked down and into a corner of the room by Ewing. Eric Gosney, brother of Stewart, was behind the bar, and, obtaining a pistol from the cash register, fired two shots toward the ceiling or top of the south wall to scare or stop Ewing. It was not in his direction. About that moment, from the north end of the room, John Gill fired several shots in the direction of Ewing and inflicted several superficial wounds on him. A bullet also struck Katherine Murphy in the leg. Ewing then released Stewart and started around the end of the bar, behind which was Eric Gosney. As he reached the end, where there was a box of mineral water bottles, Eric, about three feet away, fired a shot into his forehead, which caused his death several days later.

The defendant, Eric Gosney, testified to his fear of Ewing, and that he fired in self-defense. He could not say whether Ewing had obtained any of the bottles as he started around the end of the counter, but the police found two of them at his feet.

The foregoing material facts were given by all the witnesses. The only contradiction is by Katherine Murphy. She not only differs from the others in several immaterial matters, but says that when she went to Stewart he was sitting up and she told Ewing to get out of there, but does not say he desisted; that then Gosney fired and hit him in the head, and a moment later some one else began firing and she was hit. She says, in further contradiction of all others, that Gosney kept on firing after Ewing had fallen in the middle of the floor and not at the end of the bar.

Not every homicide is punishable by law. It may be justifiable or excusable. The burden is on the accuser to prove beyond a reasonable doubt that the accused is guilty of some degree of culpable and punishable homicide. In this case there stands out boldly from the testimony of every witness the fact that the killing of Ewing was excusable. According to the preponderating evidence, Gosney shot and killed Ewing as a necessity or apparent reasonable necessity in order to save his own life, after having restrained himself from shooting Ewing to protect the life of his brother. The testimony of Katherine Murphy is, to say the least, not at all per-

suasive; but, if it be believed, then Gosney shot in defense of his brother.

A man may repel force by force in the defense of his person against one who manifestly intends or is endeavoring by violence to commit a known felony on his person; and if in the conflict between them it appears to him, upon reasonable grounds, to be necessary to kill his assailant, such killing is justifiable. It is the active duty of a man when he sees a felony being or about to be committed by violence to prevent it, if possible. Thus right is protected against wrong in emergencies where the law would not otherwise avail. The right of self-defense in cases of this kind is founded on the law of nature; and is not, nor can it be, superseded by any law of society. In such case nature and social duty co-operate. And what one may do for himself, another may do for him; the act of the one intervening to prevent the felony being construed as the act of the person upon whom it is reasonably apparent it will be committed. These two doctrines of the law are more elaborately treated in Stanley v. Commonwealth, 86 Ky. 440, 6 S. W. 155, 9 Ky. Law Rep. 655, 9 Am. St. Rep. 305, and other opinions of the court.

Measuring the evidence in the record by this law, it is readily apparent that the verdict is palpably against it as that term is defined and understood.

As to the appellant Gill, there was no evidence proving him to be an aider and abettor of Gosney, upon which theory the case as to him was submitted. The law of causal connection in confederate or joint crimes is a complicated branch of criminal jurisprudence. The subject of aiding and abetting the commission of a crime is instructively discussed in Combs v. Commonwealth, 224 Ky. 653, 6 S. W. (2d) 1082, and Watkins v. Commonwealth, 227 Ky. 100, 12 S. W. (2d) 329. We need not repeat or supplement the exposition of the law there given. Although Gill was present at the commission of the crime and shot and inflicted slight wounds on the man killed by Gosney, there is an absence of evidence— direct or circumstantial or such as might give rise to an inference—of an agreement of action or concurrent understanding between the two men. There is nothing to show Gill instigated, counseled, encouraged, aided, or abetted, knowingly or unknowingly, the act of Gosney in

inflicting the fatal wound. It is apparent that Gill acted upon his independent impulse.

In Landrum v. Commonwealth, 123 Ky. 472, 96 S. W. 587, 588, 29 Ky. Law Rep. 924, the appellant, suddenly aroused from a drunken slumber, drew his pistol and became engaged indiscriminately in a general fight, or perhaps shot directly at Goff, inflicting slight wounds in his hand, when another man shot him in the back and through the heart killing him instantly. The evidence was held insufficient to sustain conviction of aiding and abetting. Said the court: ''To aid and abet another in a crime one must share the intent or purpose of the principal. If two or more acting independently assault another, and one of them inflicts a mortal wound, the other is not guilty as an aider and abettor. An aider and abettor is a partner in the crime, the chief ingredient of which is always intent. There can be no partnership in the act where there is no community of purpose or intent.''

But, as further pointed out in that opinion, such a participant is to be held to account according to the turpitude of his own motive and act.

Disassociating the act of Gill from that of Gosney, it appears that he shot and wounded Ewing—either just before or (if Katherine Murphy's evidence is to be believed) just after Gosney had inflicted the mortal wound. The offenses of shooting at and wounding another with intent to kill, covered by section 1166, Kentucky Statutes, and shooting and wounding another in sudden heat and passion without previous malice, a misdemeanor, covered by section 1242 of the Statutes, are included in a charge of murder—or manslaughter as here—and should be instructed upon when the evidence authorizes it. Housman v. Commonwealth, 128 Ky. 818, 110 S. W. 236; Lyons v. Commonwealth, 216 Ky. 202, 287 S. W. 534; Noble v. Commonwealth, 217 Ky. 556, 290 S. W. (2d) 330. The latter case is in some particulars much like the instant one. Upon another trial, if the evidence warrants it, as to Gill, the instructions should be confined to these two offenses, qualified by an instruction defining Gill's right to shoot in defense of Stewart Gosney or Eric Gosney.

All other questions raised on this appeal are reserved.

Judgment reversed as to both appellants.