## Luttrell v. Commonwealth.

(Decided June 23, 1933.)

(As Modified on Denial of Rehearing October 13, 1933.)

MONTGOMERY & MONTGOMERY and OLIVER POPPLEWELL for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Jess Fox and Clyde Luttrell were indicted jointly for the murder of Charley Fox. Separate trials were had. The case against Jess Fox has been disposed of. See Fox v. Com., 248 Ky. 466, 58 S. W. (2d) 608, and now Clyde Luttrell is asking for the reversal of the judgment by which he has been condemned to 10 years' confinement in the penitentiary.

For reversal, Luttrell is contending his substantial

rights were prejudiced by the overruling of his motion for a directed verdict, by the giving of the instructions given, and the failure to give other instructions to which he contends he was entitled.

The nature of the alleged errors relied on for reversal and some differences in the evidence require some additional statement of facts from those stated in Jess Fox' appeal.

Jess Fox, Clyde Luttrell, and Charley Fox are all cousins to each other. On March 29, 1923, John Foley was killed. He had married a Fox, a cousin of Jess and Charley Fox, and they were charged with killing him. An appeal by Jess Fox reached this court. See Fox v. Com., 202 Ky. 41, 258 S. W. 950. The killing of Charley Fox grew out of an accusation by Jess Fox that Charley Fox had given false testimony on the trial of Jess Fox for killing Foley.

The evidence shows Clyde Luttrell and Jess Fox had spent a portion of Sunday December 13, 1931, at Sylvester Foley's. Charley Fox came while they were there. They were all drinking. Charley Fox left and went to the Luttrell home, where he had his supper. Later Jess Fox and Clyde Luttrell left Foley's together and went to the Luttrell home. Charley left and Jess and Clyde had their supper and stood around and talked for a while. Then Charley came, and presently, Jess left, and in a short time Charley left. Soon Charley came back and wanted to borrow Clyde's pistol. Clyde refused to let him have it, but took it out to look at it, and as he says, while he was fooling with it, the pistol was discharged, accidentally. No one was struck. Clyde reloaded the pistol. Charley walked out onto the front porch, Jess Fox, who was in the roadway started to the house talking to Charley Fox as he came, and by the time he reached the porch this conversation had become a quarrel, and the men began a struggle. Clyde Luttrell, so some of the evidence shows, came to the door during this struggle, and shot Charley Fox in the left leg near the knee. All three then began a struggle for the pistol. Jess Fox got it and fired one shot which struck no one. Luttrell, thus disarmed, ran back in the house. About that time Charley Fox fell off of the porch. He had at some time in this melee, either while on the porch or after he had fallen on the ground, been cut on the right arm and in the abdomen. This last-mentioned wound proved to be fatal. Clyde testified he

did not shoot Charley Fox, neither did he cut him. Jess Fox did not testify on this trial. That one or both of them did so is quite evident. Charley was shot with Clyde's pistol, and both Jess and Clyde had knives.

There was enough evidence of Clyde's guilt to require that the case be submitted to the jury. The evidence is not only conflicting, but is also confusing.

A map was used to which the witnesses would point and refer, thus making the evidence more intelligible to the jury than to us. As a result of the use of this map, which was never filed with the record, much of this evidence reads like this sample. "It was out in the front here. I turned around, and Chloe was facing here, and my face was to the door here and it wasn't but a few words—I didn't hear but a few words till I heard two shots fire at the front of the house."

The questions were as bad as the answers, as this one will show:

"When Clyde goes in there Jess gets up and goes out here, doesn't he? Then when Clyde is in there Charley goes into that room and Charley was in there when the shot was fired and you were standing at that door?"

This reminds us of the case of Wolfinbarger v. Stanton, 220 Ky. 451, 295 S. W. 467.

Luttrell cites the cases of Combs v. Com., 224 Ky. 653, 6 S. W. (2d) 1082, State v. Hildreth, 31 N. C. 440, 51 Am. Dec. 369, Levering v. Commonwealth, 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 140, Anderson v. Commonwealth, 193 Ky. 663, 237 S. W. 45, Plummer v. Commonwealth, 64 Ky. (1 Bush) 76, Gill v. Commonwealth, 235 Ky. 351, 31 S. W. (2d) 608, Landrum v. Commonwealth, 123 Ky. 472, 96 S. W. 587, 29 Ky. Law Rep. 924, 16 C. J. p. 130, sec. 118 et seq., and other authorities to support his contention that there should have been no instruction on aiding and abetting, because there was not, so he contends, any evidence that he shared the intent of Jess Fox, and that, while there was some evidence from which the jury might have believed he shot Charley Fox, there is no evidence he then had any part in the intent with which Jess Fox was doing what he did. We do not so view the evidence.

Luttrell says he did not know who it was who was

quarreling on the porch, but, in view of his intimacy with both these men, and that Charley had just stepped out there (one witness says Jess called Charley out), that seems incredible. It was dark, but a light was burning in the house, and through a window it lighted up the porch to some extent. Other witnesses more distant from the two combatants saw and recognized them, and Luttrell, by reason of his nearness to them, almost against them, must have done so. Luttrell's testimony is that he never had this pistol after he reloaded it and put it under the pillow of his bed, and that he never went out until after the two shots had been fired and the combat was over, but there is enough to show that Luttrell was holding himself in willing readiness to aid Jess Fox, if indeed it is not enough to support the inference that it was agreed he should do so, and certainly there was evidence he did shoot Charley Fox at a very opportune time for Jess. Where two men are in a struggle and a third rushes up and shoots one of them, he certainly is aiding the other, and must share his intent, at least it would take more evidence than this record discloses to induce the belief it was a mere chance occurrence.

The court gave this definition:

"Aiding, abetting, assisting, encouraging means to act in concert with another in the commission of a crime or to purposely help one to commit a crime and to be present at the time of the commission of the crime, and helping."

Luttrell now contends this instruction should have had in it at an appropriate point the words "sharing the felonious intention of such other."

There may be cases when such an instruction should be given, but this is not one of them.

In Ross v. Com., 9 S. W. 707, 10 Ky. Law Rep. 558, Ross had held a lamp while Parker killed, with an ax, Benedict Rhodes as he lay asleep in his bed. The court instructed on aiding and abetting, and said nothing about sharing Parker's intent. The death sentence of Ross was affirmed.

Instructions are only required on matters about which there is some issue to be presented to the jury.

In Gibson v. Com., 204 Ky. 748, 265 S. W. 339, 344, we said:

"Ordinarily, the defendant's theory of the case is simply 'not guilty,' and this theory is fully presented by the instruction to acquit him, unless he is proven guilty beyond all reasonable doubt.

"However, there are cases where the accused admits one or more of the essential elements of the offense charged, but attempts to avoid conviction by proving facts or circumstances to excuse what he did, and under such circumstances his theory of the case should be set out in a special instruction."

Luttrell makes no claim he shot to frighten Charley Fox and induce him to withdraw from the combat and did not intend to kill him or that Jess Fox should do so, but says he was not there and did nothing neither shooting Charley Fox or cutting him. Instructions should present the issues. Luttrell makes no claim he was there and took some small part in this combat, but had no intent that Jess Fox should carry it to the extent that the man should be killed, or seriously injured.

After the commonwealth had introduced evidence that while Jess Fox and Charley Fox were engaged in a struggle, Clyde Luttrell ran up to them with a pistol and shot Charley Fox with it, the presumption arises he intended to kill Charley Fox. Charley Fox did not die as a result of the pistol wound inflicted on him by Luttrell, but died as a result of a knife wound in the abdomen, which was probably inflicted by Jess Fox just before or just after this shooting, but which may have been inflicted by Luttrell, and which was certainly inflicted by either Jess Fox or Clyde Luttrell. If this knife wound was inflicted by Clyde Luttrell, then the law presumes it was inflicted with the intention on the part of Clyde Luttrell that Charley Fox should die therefrom. If we assumed Jess Fox inflicted on him the knife wound from which Charley Fox subsequently died, then the presumption is Jess Fox intended he should so die. No one can deny that by shooting Charley Fox as and when he did, Clyde Luttrell materially aided Jess Fox and he is presumed to have shared the latter's intent.

Under all of the circumstances outlined above, the intent with which the outlined acts were done is known only to the doer thereof. There would be no way for the commonwealth to show the intent with which they were done, therefore the law presumes the doer in-

tended by them to accomplish the results that would naturally follow from them or did result from them.

If A. shoots B. with a shotgun and kills him, that is all that is necessary to prove in order to fix on A. the guilt of B.'s murder. If A. pleaded "not guilty" and it is proven he did shoot B. as stated, no court would hesitate for a moment about overruling A.'s motion for a peremptory instruction made at the close of the evidence for the commonwealth based upon the idea that there was no proof he intended to kill B. If A. does not offer any evidence, the question of his intent in doing what he did is still a question for the jury, but if the court instruct the jury to find him guilty if it shall from the evidence, to the exclusion of a reasonable doubt, find he did it, willfully, feloniously, and with malice aforethought, and shall further instruct as required by section 238 of the Criminal Code of Practice, the question of intent is sufficiently presented. Gordon v. Com., 136 Ky. 508, 124 S. W. 806. The court would not have to give an instruction requiring the jury to believe A. intended to kill B. before he could be found guilty. The word "willfully" means intentionally. State v. Schaefer, 116 Mo. 96, 22 S. W. 447. If A. should introduce any proof in the nature of an admission and an avoidance, then there would be an issue of self-defense, defense of home, defense of another, accident, compulsion, withdrawal from the combat, insanity, etc., depending on the evidence so introduced for A. Under those circumstances, A. has a theory of the case. The defendant has no theory of the case requiring a specific instruction, to present it, where his defense is an alibi. See Wallace v. Com., 187 Ky. 775, 220 S. W. 1051.

Luttrell's sole defense here is an alibi. He says, and the witnesses who testified for him all say, he was in the house when this shooting was done. He makes no issue about the intent with which it was done; his position is, simply: "I did not do it. I was not there." The jury did not believe his testimony, or that of his witnesses, but did believe the evidence offered by the commonwealth, which was that Luttrell was there, did take part in the struggle, and did shoot Charley Fox. After rendering this aid to Jess Fox, the presumption is he shared the intent with which Jess Fox was doing what he did, and that presumption will persist until

there is evidence presented to overcome it, and in the absence of such evidence as to intent there is no necessity for specifically instructing thereon.

The indictment in this case did not charge, nor does it have to charge (section 130, Criminal Code of Practice), that this killing was "intentionally" done. In the instruction on murder the jury was required in order to convict to find it was willfully done. In the manslaughter instruction (under which he was convicted), the court required the jury to find it was willfully done. Since the word "willfully" means intentionally, this was equivalent to requiring the jury to find it was intentionally done. Moreover, in the definition of aiding, abetting, etc., copied above (a rather awkward, but not an erroneous, definition), the court used the word "purposely," which also means intentionally.

This court affirmed the judgment in Bingham v. Com., 183 Ky. 688, 210 S. W. 459, where one Belcher did the deed, Bingham was convicted as an aider and abettor, and the instructions are much like the instruction here. The same is true in Parker v. Com., 180 Ky. 102, 201 S. W. 475.

The same is true in Mickey v. Com., 72 Ky. (9 Bush) 593, with the exception that the Mickey judgment was reversed for an error in the instructions but not for the alleged error of which Luttrell is complaining.

Tucker v. Com., 145 Ky. 84, 140 S. W. 73, is like the Mickey Case. The evidence in this case was stronger in establishing defendant's guilt than was true in any of the cited cases, for in none of them was there any proof that defendant performed any overt act, whereas the defendant, Luttrell, according to some of the commonwealth's evidence, shot the deceased while engaged in a broil with Jess Fox, and perhaps engaged in it himself. It is possible that a case might be presented where the evidence would present a situation requiring a specific instruction as to the intention of the alleged aider and abettor, but under the circumstances of this case we do not so interpret the testimony. Moreover, as we have above pointed out, the instructions of the court in this case substantially conform to the rule contended for by defendant's attorneys.

The defendant is entitled to a specific instruction on intent only when the nature of the evidence is such as to make a specific issue as to intent.

Luttrell insists he was entitled to an instruction under section 1166 and section 1242, Ky. Stats., and in support of it cites cases we shall now discuss.

In Housman v. Com., 128 Ky. 818, 110 S. W. 236, 33 Ky. Law Rep. 311, we held such instructions proper because there was evidence that the victim died from causes other than the wounds he had received, which is not shown in this case. Under similar facts we held such instructions proper in Harris v. Com., 218 Ky. 798, 292 S. W. 467, but such facts do not appear here.

In Lyons v. Com., 216 Ky. 202, 287 S. W. 534, we reversed the judgment as to Doll Lyons because there was evidence that the shooting he did was done after Charles Lyons had inflicted upon Heath a mortal wound, and the combat between Heath and Charles Lyons was over and they had separated, which is not the case here. For a similar reason and under similar facts we reversed the judgment in Noble v. Com., 217 Ky. 556, 290 S. W. 330; hence that case is not applicable here.

In Richardson v. Com., 235 Ky. 469, 31 S. W. (2d) 728, we reversed the judgment because the evidence showed Richardson had no part in the infliction on Spivey of his mortal wound, but had, after that had been done, shot at him without wounding him, so that case does not apply here.

If there had been any evidence that after this difficulty was over Clyde Luttrell had come to the porch and shot Charley Fox, then he would have been entitled to such instructions, but all the testimony that he did shoot Charley Fox is that he did so while these men were engaged in a combat. He admits he came to the door after it was over, but says he did no shooting or cutting.

Luttrell cites Bethel v. Com., 80 Ky. 526, Meade v. Com., 214 Ky. 88, 282 S. W. 781, and Logsdon v. Com., 215 Ky. 707, 286 S. W. 1067, but those cases are utterly inapplicable.

The judgment is affirmed.