GLICKMAN, Associate Judge,
concurring in part and dissenting in part:
For the most part, I join the per curiam opinion disposing of the appeals in these *498 several cases. I cannot join Section VII.C, however. In that section, my colleagues hold that appellants Harris and Tann could be liable for aiding and abetting Robert Foreman’s shooting of James Taylor , and Bernard Mackey even if Harris and Tann were unaware of Foreman’s presence or actions and did not intend to assist or encourage Foreman in his criminal activity. I believe my colleagues in the majority base that holding on an erroneous theory of accomplice liability — a novel theory of their own devising, and one not relied on at trial or argued on appeal.
As the per curiam opinion explains in more detail, the shootings occurred on May 4, 2006, at a playground on 22nd Street Southeast. According to the government’s proof at trial, after Omar Harrison verbally abused and slapped Ashley Tyndle, several members of the 22nd Street Crew, including Harris and Tann, rushed to Tyndle’s defense. , Harris and Tann fíred'' several shots at' Harrison. Foreman, another member of the Crew, arrived on the scene a few moments later and, unbeknownst to Harris and Tann, independently decided to join in the shooting. Foreman missed Harrison but the evidence supported a finding that he hit, and killed, Taylor. He also may have fired the shot that injured Mackey. Over appellants’ objections, the trial court instructed the jury that Harris and Tarih could be found guilty for these two shootings as aiders and abettors based on their participation in “the crime” (i.e., their own shooting at Harrison) even if they did not knowingly or intentionally assist or encourage the principal assailant (i,e., Foreman). The jury found Harris and Tann guilty, of first-degree murder while armed for Taylor’s death and of assault with intent to kill while armed for the wounding of Mackey.
The fundamental issue on which I differ with my colleagues is whether a person can be found guilty as an aider and abettor under the law of the District of Columbia without proof that he intended to assist or encourage the principal offender. I think not. Sitting en banc, we declared in Wilson-Bey that it is a “requirement [for aiding and abetting liability] that the accomplice be shown to have intended that the principal succeed in committing the charged offense.”[1] We elaborated, in a subsequent decision, that this court has “adopted the doctrine that ‘in order for a person to be held accountable for the specific intent of another under an aiding and abetting theory of principal .liability, the aider or abettor must have knowingly aided the other person with the intent that the other person commit the charged crime.’”[2] This core requirement, has a long history, which is reviewed in Judge Learned Hand’s influential opinion defining accomplice liability under federal law in United States v. Peoni.[3] The Supreme Court endorsed Hand’s definition in Nye & Nissen v. United States,[4] and it now is well settled that “the specific intent to facilitate the commission of a crime by another” is an essential element of aiding or abetting *499 under the general federal aiding and abetting statute, 18 U.S.C. § 2.[5] “The intent necessary to support a conviction for aiding and abetting goes beyond the mere knowledge that the defendant’s action would tend to advance some nefarious purpose of the principal. Rather, the defendant must act with the specific intent of facilitating or advancing the principal’s commission of the underlying crime.”[6] Because “our aiding and abetting statute does not differ substantially from its federal counterpart,” we “look to the federal courts’ interpretation of the federal statute in construing our own.”[7]
Thus, contrary to the position espoused by the government and implemented 'by the trial court in this case,[8] for a defendant " to be liable as an aider or abettor, “it is not sufficient that he intentionally engaged in acts which, as it. turned out, did give assistance or encouragement to the principal”; in addition, “the accomplice must have intended to give, the aid or encouragement” to the principal.[9] For the same reason, it is not sufficient that the defendant merely had the same mens rea as the principal.[10] There is “a dual mental state requirement” for accomplice liability: the accomplice not only must have “the culpable mental state required for the underlying crime committed by the principal”; he also must “assist[] or encourage[] the commission of the crime committed by the principal with the intent to promote or' facilitate such commission.”[11]
*500 This does not mean the accomplice always must know the identity of the principal offender. It almost always is the case; of course, that an accomplice' does know whom he is intentionally assisting or 'encouraging to commit an offense, because they are co-participants in the venture (even if the accomplice may not know the principal’s name). But it is possible 'in-some circumstances to be an aider and abettor — to help or induce another person to commit a crime, and to do so knowingly and intentionally — without knowing 'who that other person is. A typical example is the person who knowingly attaches himself to a large group, such as a lynch mob, a criminal gang, or a vigilante body', that is engaged in or bent on breaking the law. Such a person may intentionally assist or encourage others in the group to commit illegal acts, and thereby be liable for their offenses as* an aider and abettor, ..even though (given the size of the..group,.the chaos of the action, or other circumstances) he may not know who is in the group or who the principal offenders in it are.[12] But one cannot-be liable as an aider and abettor without having the intent to assist or encourage a principal actor at all. One cannot be an inadvertent accomplice.
The trial court therefore erred in allowing the jury to find Harris-and Tann-guilty on the government’s novel theory that they aided and abetted Foreman if, by shooting at Omar Harrison themselves, they unknowingly and ■ unintentionally “incited” Foreman to join in the attack. It is beside the point that Foreman intended to aid and abet Harris and Tann; that has- things backwards-. Accomplice liability depends oh whether the accomplice intended to en-' eouráge or assist thé principal, not on whether the principal intended to encourage or assist the accomplice. ’
My colleagues agree that the trial court erred by instructing the jury in accordance with thé government’s theory of aiding and abetting.. Yet in spite of their agreement on this point, they affirm appellants’ convictions on the basis of a novel theory of their own devising that suffers from the same defects as the government’s theory. Under this theory, Harris and Tann are liable as Foreman’s accomplices even if they c^id not intend to encourage or assist Foreman, because (1) they shared a “community of purpose” with Foreman and- (2)' it was reasonably foreseeable that their actions would inspire someone who shared their community of purpose to commit the crime.[13]
To evaluate this theory of - aiding and abetting liability without intentional support for the principal, it is important to understand two : things about its central concepts. First, the term “community of purpose” does not imply concerted activity on the part of the principal and putative accomplice. According to. my colleagues, the requisite “community of purpose” may exist in the absence of any agreement, understanding, or cooperation between them with respect to the crime in question; indeed, they may be unaware of each other and acting independently, albeit to the same criminal end.[14] Second, and most *501 critically, my colleagues’ theory of accomplice liability treats reasonable foreseeability as the legal equivalent of intentionality.[15]
This represents a considerable expansion of the doctrine of accomplice liability, for, as discussed above, it is a .basic requirement in American criminal law that an accomplice actually “must intend that his acts have the effect of assisting or encouraging” the principal.[16] That the putative accomplice reasonably should have foreseen the principal’s actions (and, for that matter, that he would have approved of them had he foreseen them) is not enough. Reasonable foreseeability is not the legal equivalent of intentionality; as this court explained in Wilson-Bey, to equate the two concepts is to confuse intentionality with the mental state on which mere negligence is based.[17] Often enough, people do not intend the reasonably foreseeable consequences of their actions. While a trier of fact is permitted to infer that a defendant did intend the reasonably foreseeable consequences of his acts, a trier of fact is not and cannot be required to do so, and cannot be presumed to have done so.[18]
My colleagues’ theory of accomplice liability for the principal actor’s reasonably foreseeable acts seems to be patterned on the doctrine of Pinkerton conspiracy liability. To establish Pinkerton liability, however, the government must’ prove “that an agreement existed, that a substantive crime was committed by a co-conspirator in furtherance of that agreement, and that the substantive crime was' a reasonably foreseeable consequence of the agreement between ■ the conspirators.”[19] My colleagues’ theory substitutes “community of purpose” for the conspiratorial agreement that is the sine qua non of Pinkerton. But this is no small difference, because Pinkerton liability for the reasonably foreseeable acts of co-conspirators is based on the existence of an agency • relationship between the conspirators. Such a relationship is created by their agreement but not by their mere “community of purpose” as my colleagues use that term.[20]
In essence, I think it fair to say that my colleagues’ “community of purpose” theory of .unintentional aiding and abetting is what this court warned against in Wilson-Bey: . a hybrid that, without adequate justi- *502 fícation, “conflat[es] the two doctrines [of conspiracy and aiding and abetting] into one omnibus and sprawling theory of vicarious criminal liability.”[21] It is telling that the majority opinion cites the “broader conspiracy to kill ‘outsiders’ among the 22nd Street Crew members” as constituting both the evidence of “the community of purpose that, as a factual matter, was shared between Tann, Harris, and Foreman at, the time of the shooting,” and the reason it was “foreseeable to Harris and Tann that other 22nd Street Crew members in the area — including, unbeknownst to them, Foreman — would respond by joining in the effort to shoot Omar Harrison.” [22] The effect is to uphold Harris and Tann’s convictions on a theory that they were Foreman’s co-conspirators rather than a theory that they were his aiders and abettors. But the government has not relied op the doctrine of Pinkerton liability here. Harris and Tann were not charged with the Taylor/Mackey shootings under Pinkerton, and the government contended in the trial court that it “was not required to show a prior association between Harris [or Tann] and the third shooter .... [as] [s]uch an association, while relevant under a vicarious-liability theory, was not,, in the government’s view, necessary for aiding and abetting.”[23] Perhaps the government misjudged its trial strategy,-, but if so, it is not the job of this court to remedy the government’s mistake.
In lieu of providing a sound rationale for their hybrid theory of aiding and abetting, my colleagues claim it is grounded in the common law. In support of that claim, they cite five cases. None of them is from this jurisdiction, or from Maryland (whence our common law derives[24]), and none is from a court adhering to the Peoni doctrine. Four of the five cases were decided before Peoni, and the fifth was decided hot under common law, but under a statutory amalgamation of aiding and abetting with conspiracy principles that has no counterpart in the law of our jurisdiction. None of the five cited cases approves the theory of aiding and abetting that my colleagues espouse; nor, I believe, would the courts in those cases find Harris and Tann liable as Foreman’s accomplices on such a theory.
In the-two Kentucky cases, Whitt v. Commonwealth[25] and Landrum v. Commonwealth, [26] the appellate court held that the defendant could not be convicted of aiding and abetting a homicide in the absence of proof that he shared the intent or purpose of the principal, who had intervened, independently ánd without the defendant’s knowledge, in the defendant’s altercation with the decedent. My colleagues infer that the result would have been different had there been evidence that the principal and the putative aider and abettor shared the same purpose.[27] That inference is belied, however, by the subsequent decision of Kentucky’s highest court in Haynes v. Commonwealth.[28]
The Haynes decision is rather on point. “Upon receiving word that his two sons, *503 the appellants John Robert and Tounsel [Ray] Haynes, were engaged in what might be called a ‘shoot-out’ with William Caudill, the appellant Joe Haynes armed himself with a rifle, went to the scene of the affray, and shot and killed Caudill.” [29] All three appellants were convicted of manslaughter, and they appealed. With respect to the two sons, who were tried as aiders and abettors of their father’s homicide, the Court of Appeals of Kentucky said “[t]he question is, under what circumstances does a pérson engaged in an affray become an aider and abettor of another who intervenes uninvited, even assuming that they ‘share the criminal intent or purpose’ ”?[30]
Contrary to my colleagues’ theory of aiding and abetting, the court reversed the two sons’ convictions for lack of evidence that they sought their father’s intervention or did anything to provide “assistance or encouragement” to him, regardless of any shared criminal intent or purpose they and their father -had in shooting at Caudill.[31] Nothing in Haynes supports' my colleagues’ notion that, the outcome would have been different had there been evidence that Joe Haynes’s intervention was foreseeable to his sons. On the contrary, there was such evidence in the case — as the court expressly acknowledged, Tounsel Haynes (who may have provoked the gun battle) saw his father coming to their aid and did not ask him to “stay back” — and the court held that it did not “amount to assistance or encouragement.”[32]
The cases from New Mexico and Utah, State v. Ochoa[33] and State v. Kukis,[34] likewise do not support the thesis that á defendant may be convicted as an aider and abettor without proof that' he intentionally encouraged or assisted the principal. The two cases merely illustrate that a member of a criminal mob who intentionally helped other members commit a crime may be found guilty of aiding and abetting them even if he does not know which particular member of the mob actually perpetrated the offense.[35] Neither Ochoa nor Kukis suggests that a defendant could be: found *504 guilty as an accomplice if he lacked the intent' to aid or abet others in the mob to break the law.[36] Rather, as the Supreme Court of New Mexico said in a subsequent case, “a jury cannot convict a defendant on accessory liability for a crime unless the defendant intended the principal’s acts.”[37]
Lastly, the Illinois-intermediate appellate court’s decision in People v. Cooks[38] is similar to Ochoa and Kukis except that the defendant was a member of a criminal gang rather than a mob, and the case involves the application of a hybrid state statute (rather thap common law) providing, inter alia, that a person is “legally accountable” for the conduct of another person in furtherance of their “common criminal design or agreement.”[39] The defendant in Cooks was convicted under this provision for a murder committed by an unidentified gunman based on circumstantial evidence that the twb were fellow gang members retaliating in a “joint action” against members of a rival gang.[40] Although the identity of the second gunman was not established at trial, nothing in the court’s opinion suggests that the defendant’s conviction would have been upheld absent evidence that he and the unknown gunman were acting together and in concert with each other. The Illinois Supreme' Court has made clear that, even under the state’s common design rule, a defendant must have “the intent to promote or facilitate [the principal’s] commission” of an offense.[41]
In sum, I submit that my colleagues have crafted an unprecedented and unsound rationale for upholding Harris and Tann’s convictions — a rationale that is irreconcilable with Wilson-Bey and other binding decisions of this court. I am compelled to add that this exercise in judicial *505 creativity is all the more objectionable because it is done sua sponte and without the benefit of any briefing or other input by the parties on the merits of the “community of purpose/foreseeability” theory of accomplice liability or its application in this case. I think it ill-advised, unfair to the parties, and contrary to this court’s norms for the majority to develop and rely on this unforeseeable reshaping of a major doctrine in the criminal law without affording the parties the opportunity to address it in supplemental briefing.[42] In the past, when this court has considered deciding an appeal on a basis “the parties failed to identify and brief’ — a' discretionary departure from the general rule that points not urged on - appeal are deemed to be waived — we have taken care to “ensure procedural fairness, both to the government and to the defense, by providing each party with the- opportunity to brief’ the issue.[43] This is ’so even when the issue injected by the court involves settled legal principles. There is no reason to deviate from that rule of basic fairness here.
For the foregoing reasons, I respectfully dissent from Section VII.C of the per cu-riam opinion and would reverse the convictions of Harris and Tann arising from the shootings of Taylor and Mackey.

. Little v. United States, 989 A.2d 1096, 1102 (D.C.2010) (quoting Wilson-Bey, 903 A.2d at 834).

. 100 F.2d 401, 402 (2d Cir.1938) (explaining that "all these definitions [of an "accessory”] have nothing whatever to do with the probability that the forbidden result [the crime committed by the principal offender] would follow upon the accessory's conduct; and that they all demand that he in some sort associate himself with the [principal’s] venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed”).

. 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

. United States v. Washington, 106 F.3d 983, 1004 (D.C.Cir.1997) (quoting United States v. Raper, 676 F.2d 841, 849 (D.C.Cir.1982)); see also, e.g., Rosemond v. United States, — U.S. -, 134 S.Ct. 1240, 1245, 188 L.Ed.2d 248 (2014) ("[Ujnder § 2 ‘those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime.’ ”) (quoting Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 181, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)).

. United States v. Frampton, 382 F.3d 213, 223 (2d Cir.2004).

. Wilson-Bey, 903 A.2d at 831 (internal quotation marks and brackets omitted).

. The government's position, at trial and on appeal, is that "if is an accomplice’s intentional participation in a crime, not his association with a principal, that gives rise to aiding and abetting liability.” Br. for Appellee, at 204. The government thus argues that Harris and Tann were aiders and abettors if, by shooting at Harrison, they "incited” Foreman to join in the attack, even if they did so unknowingly and unintentionally. The trial court instructed the jury in accordance with this theoty. But the government has cited no authority , supporting its claim that unintentional incitement can constitute aiding and abetting. Cf. Black’s Law Dictionary 880 (10th ed.2014) (defining “incitement" in the field of criminal law ás “[t]he act of persuading another person to commit a crime”). Nor has the government been able to find any case, from any jurisdiction, holding a defendant liable as an aider and abettor for the independent criminal act of another that-the'defendant did not intentionally encourage br assist, in some way.

. Wayne R. LaFave, Criminal Law § 13.2(c) at 713-14 (5th ed.2010) (citing, inter alia, Bogdanov v. State, 941 P.2d 247 (Colo.1997) (en banc)).

. We have held that “where a specific mens rea is an element of a criminal offense, a defendant must have had that mens rea himself to be guilty of that offense, whether he is charged as a principal or as an aider and abettor.” Perry v. United States, 36 A.3d 799, 808 (D.C.2011) (quoting Kitt v. United States, 904 A.2d 348, 356 (D.C.2006)). This is a necessary, but not a sufficient, condition for accomplice liability.

. Bogdanov, 941 P.2d at 250-51 (internal citation and quotation marks omitted); see also LaFave, supra n. 9, § 13.2(b) at 713 ("Generally, it may be said that accomplice liability exists when the accomplice intentionally encourages or assists, in the sense that his purpose is to encourage or assist another in the commission of a crime as to which the accomplice has the requisite mental state.”).

. As I discuss below, two of the cases relied upon by the majority, State v. Ochoa, 41 N.M. 589, 72 P.2d 609 (1937), and State v. Kukis, 65 Utah 362, 237 P. 476 (1925), are cases of this sort.

. See ante at 444-45.

. Ante at 446 n. 28; see also ante at 445 n. 27 ("[A] 'community of purpose’ necessarily implies- that there exists some tacit, if not always explicit, agreement or understanding between all involved (such as a code of conduct), even if there is no agreement to commit a specific crime.” (majority's emphasis)).

. Ante at 445 and n. 26; see also ante at 447 n. 32 (“[W]e rely on the principle that Harris and Tann could be found to have intended the reasonably foreseeable consequences of their acts.”). The jury in this case, of course, was not required to make a finding that Foreman’s intervention was reasonably foreseeable to Harris and Tann, let alone that the two defendants intended their actions to assist anyone.

. LaFave, supra n. 9, § 13.2(c) at 714.

. See Wilson-Bey, 903 A.2d at 836-37; see also, e.g., Robinson v. United States, 100 A.3d 95, 106 (D.C.2014) ("Wilson-Bey rejected the proposition (and any jury instruction incorporating it) that a defendant may be held liable as an aider and abettor based on a merely negligent state of mind — i.e,, for acts of confederates that were merely ‘reasonably foreseeable’ to the defendant or the ‘natural and probable consequences’ of the criminal venture in which the defendant intentionally participated — when a degree of mens-rea higher than negligence was required to convict the principal actor for those acts.”). ■

. Wilson-Bey, 903 A.2d at 835 n. 38; see also Sandstrom v. Montana, 442 U.S. 510, 522-24, 99 S.Ct. 2450, 61 L.Ed.2d 39.(1979) (instruction in a criminal case that the “law presumes that person intends the ordinary consequences of his voluntary acts” held to unconstitutionally shift the burden of persuasion).

. Collins v. United States, 73 A.3d 974, 982 (D.C.2013) (quoting Wilson-Bey, 903 A.2d at 840).

. See Wilson-Bey, 903 A.2d at 842.

. Id. at 841.

. Ante at 446 n. 28.

. Br. for Appellee at 193.

. Woods v. United States, 65 A.3d 667, 671 n. 8 (D.C.2013); see In re Estate of Parnell, 275 F.Supp. 609, 610 (D.D.C.1967).

. 221 Ky. 490, 298 S.W. 1101 (1927).

. 123 Ky. 472, 96 S.W. 587 (1906),

. But cf. id. at 588 (“If two or more acting independently assault another, and one of them inflicts a mortal wound, the other is not guilty as an aider and abettor.”).

. 515 S.W.2d 240 (Ky.1974).

. Id. at 240-41.

. Id. at 241 (quoting Whitt, 298 S.W. at 1103; emphasis added).

. Id. Specifically, the court said,
There is no evidence from which it may be reasonably inferred, as distinguished from speculation, that either of the sons sent for the father. There is no evidence even that John Robert knew he had arrived until after the killing. The clear weight of the evidence is that John Robert had stopped shooting before the father appeared and that Tounsel Ray never fired a shot during the entire proceeding. All that Tounsel Ray could have done that he did not do, as he lay in his place of protection behind a rock and saw his father's approach, was to, ask him to stay back,, but that omission would not itself amount to assistance or encouragement. Nor, of course, does the fact that Tounsel may have provoked the encounter. On balance, bearing in mind the great principle of reasonable doubt, we think the evidence here will not justify conviction of the sons.as participants in the father’s act.

Id.

. See footnote 31, supra.

. 41 N.M. 589, 72 P.2d 609 (1937).

. 65 Utah 362, 237 P. 476 (1925).

. That proposition does not apply to sustain the convictions of Harris and. Tann in this case. They were not prosecuted for the offenses agqinst. Taylor and Mackey bn the theory that they had intentionally encouraged or assisted an attack on Omar Harrison by a group (i.e., the 22nd Street Crew) that happened to include Foreman. Had such a theory been properly presented to the jury and resulted in conviction, my opinion on appeal might be different. See Rosemond v. United States, — U.S. -, 134 S.Ct. 1240, 1245, 1248-50, 188 L.Ed.2d 248 (2014). But that is not the situation with which we áre confronted.

. It should be noted, however, that the Utah court accepted the doctrine, which we rejected in Wilson-Bey, of accomplice liability for criminal acts that are the "probable and natural consequences” of the common design, even if those consequences were not part of the accomplice's original intent. Id. at 481.

. State v. Carrasco, 124 N.M. 64, 946 P.2d 1075, 1079 (1997). Cf. Ochoa, 72 P.2d at 616 ("The accused may not be held for the independent act of another even though the same person be the victim of an assault by both.”).

. 253 Ill.App.3d 184, 192 Ill.Dec. 405, 625 N.E.2d 365 (1993).

. Ill.Rev.Stat.1985, ch. 38, par. 5-2(c), which provided that a person is "legally accountable” for the conduct of ánother when
(c) either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or . commission of the offense.
When 2 or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the common design or agreement and all are equally responsible for the consequences of those further acts. Mere presence at the scene of a crime does not render a person accountable for an offense; a person’s presence at the scene of a crime, however, may be considered with other circumstances by the trier of fact when determining accountability.
The statute appears to combine conspiracy and aiding and abetting principles, including the natural and probable consequences doctrine that Wilson-Bey rejected.

. Cooks, 192 Ill.Dec. 405, 625 N.E.2d at 370.

. People v. Perez, 189 Ill.2d 254, 244 Ill.Dec. 371, 725 N.E.2d 1258, 1266 (2000). “Accountability” under Illinois law, the court explained, "focuses on the degree of culpability of the offender and seeks to deter persons from intentionally aiding or encouraging the commission of offenses. Thus, unless the accomplice intends to aid the commission of a crime, no guilt will attach.” Id. 244 Ill.Dec. 371, 725 N.E.2d at 1265-66 (emphasis in the original; internal quotation marks and citation omitted).

. By the same token, I think it unfair and inappropriate for the majority to find that the trial court's "erroneous" failure to instruct the jury on the "community of purpose” theory of liability was harmless without affording Harris and Tann an opportunity to address that question. (Parenthetically, for myself, I am not persuaded to find harmless the trial court’s erroneous rulings and instructions rejecting the requirement that an accomplice must intend to encourage or assist the principal.)

. Randolph v. United States, 882 A.2d 210, 226-27 (D.C.2005); see also id. at 226 ("[N]o matter whose ox is gored, this court has frequently requested post-argument briefing of issues not adequately raised by counsel, to the end that, after both parties haVe been fully heard, the court is in the best position to render a sound decision.”).