## Smiddy v. Commonwealth.

(Decided October 2, 1925.)

## Appeal from Whitley Circuit Court.

1.  Criminal Law—What Constitutes One an "Aider and Abettor" Stated.—To Constitute one an aider and abettor in the commission of crime he must be actually or constructively present when it is committed and participate in its commission by some act, word, or gesture, and though no prearranged agreement between accused and codefendants is essential, it is necessary that accused be guilty either of some overt act, advocacy, or encouragement, of principal in some way in commission of the unlawful act.

2.  Homicide—Evidence as to Accused Aiding and Abetting Murder Required that Accused's Motion for Directed Verdict be Sustained. —In prosecution where accused was indicted for murder, and for aiding and abetting murder, where it appeared that accused was actually present when son killed deceased, but, at the time of and before the killing was unconscious as a result of being struck with an adz by deceased, and there was no evidence of aiding and abetting before so struck, held that, under the evidence, accused's motion for directed verdict of not guilty should have been sustained.

STEPHENS & STEELY for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellant and his two sons, Bill and Dave, were jointly indicted, charged with the murder of Gross. The first count in the indictment charged them jointly with the killing, while the second count charged that his son, Bill, had done the killing, and that appellant and Dave were then and there present and near enough to and did aid, abet, counsel and assist Bill in the commission of the crime.

There were two other counts, in one of which the three were charged with a conspiracy to bring about the death of Gross, and in the other they were charged with being in a conspiracy for the purpose of injuring and intimidating Croley, and while in pursuit of such conspiracy did kill and murder Gross.

On his separate trial appellant was convicted of manslaughter and sentenced to two years' imprisonment.

The father and two sons were each employes at the Cook mines in Whitley county, and were at work in adjoining rooms in the mine, the two brothers in one room and the father and another in the adjoining room. Appellant had been at work for the company operating the mine for some time, and in some way had become indebted to it. In November, 1924, he was working under some sort of an arrangement with the officers of the company by which a part of his earnings were to be applied to the extinguishment of his debt.

It is the custom at the mines for the miners' wives to go to the commissary and make purchases to be charged against their husband's earnings. On one Saturday in November, 1924, appellant's wife went to the commissary and was denied further credit, whereupon she wrote a note and sent it to the mine notifying her husband of that fact and telling him that he would have to quit work early so that he could go to Jellico, a few miles away, and get some supplies to last over the week-end. Appellant did not receive the note, but did get information as to its contents. He accordingly quit work a little earlier than the other miners and proceeded to walk out of the mine instead of going out on the coal cars, as was his custom.

Croley was the superintendent of the mines and as such had charge of the commissary, while Gross was a mine boss and usually stayed in or about the mines. While on his way home appellant, rather unexpectedly as it appears, came upon Croley and Gross at a place where neither of them would ordinarily be expected. Gross was repairing one of the tracks or tramways connected with the mining operation, and when appellant came up to them he addressed himself to Croley and complained of his refusing further credit to him at the comissary. The two, appellant and Croley, had quite a little conversation about the matter, but there was nothing in the nature of a difficulty between them. Finally Gross, who was present, volunteered to say to appellant in substance that he ought not to talk that way to Croley, whereupon appellant and Gross got into a wordy altercation which culminated in the application of a vile epithet by appellant to Gross, whereupon the latter immediately let fly at him with a track adz with which he was working and struck him over the eye and inflicted a serious wound; in fact, he was knocked over an embankment and went some eight or ten feet down that and lodged in some underbrush or grape vines, and from the time of

the stroke was unconscious for several hours, and did not become entirely normal for several days.

In the meantime, it being Saturday, the other miners had quit work early and had come out of the mine on two cars, appellant's two sons being on the last car. Those cars stopped a short distance from the place where appellant, Croley and Gross were talking, and the last car had stopped just a short time before the striking of appellant. His son Bill had brought out of the mine with him two mining picks for the purpose of having them sharpened, and when the epithet was applied to Gross he was near enough to the parties to hear it, but had heard nothing that preceded it. When, therefore, Gross struck appellant with the adz Bill Smiddy was only a short distance away and saw it. He immediately dropped one of his picks and struck Gross with the other, from which he subsequently died.

There is no evidence that a word, look or gesture of any kind passed between George Smiddy and his son Bill before the latter struck Gross. Nor is there any evidence that appellant ever knew that his son Bill was near when he applied the epithet to Gross; certainly he knew nothing about what happened after Gross struck him, for all the evidence shows that he was wholly unconscious for some hours thereafter.

The court did not instruct under the conspiracy charges in the indictment, and this was correct, for there was a total failure of evidence to authorize it. But the court did, on appellant's separate trial, authorize his conviction in an aiding and abetting instruction.

The only question necessary to consider is whether appellant's motion for a directed verdict of not guilty should have been sustained. There was a total lack of evidence showing any concert of action in any way or form between appellant and either of his sons before he became unconscious, and manifestly there could have been none thereafter. To constitute one an aider or abettor in the commission of a crime he must be actually or constructively present when it is committed and participate in its commission by some act, word, deed or gesture. It is not essential that there should be a pre-arranged agreement between him and his codefendants, but it is necessary that one charged with aiding and abetting be guilty either of some overt act, or advocacy or encouragement of his principal in some way in the com-

mission of the unlawful act. Bradley v. Commonwealth, 201 Ky. 413.

It is clear under the facts of this case that while appellant was actually present or nearby when his son killed Gross with the pick he was in fact at the time and before the killing unconscious as a result of the blow inflicted upon him by Gross. It is difficult to understand how one unconscious at the time another committed an offense could in a legal sense be either actually or constructively present so as to make him liable as an aider or abettor. There being no evidence of aiding or abetting before appellant was struck by the adz, and it being certain by reason of his disability there could have been none thereafter, we are of opinion that the court erred in not sustaining his motion for a directed verdict.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.