# Alexander v. Commonwealth.

Jan. 24, 1941.

Campbell Howard for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Near midnight on Saturday, October 29, 1939, Neville Fitzhugh was shot and fatally wounded by A. J. Moore, from the effects of which he died about 9 o'clock on the morning of the next day. The place of the shooting was in a roadhouse located some mile or more from Central City in Muhlenberg County, and was owned and operated by Albert Devine, but he imparted to the methods employed in the conduct of his business none of the holy qualities indicated by his name. His departure therefrom began by naming his place "Hollywood," but it was described by the witnesses in the case as a hell-hole, and which the proof bears out. As is natural to suppose such a place is greatly patronized on Saturday nights and Devine, in anticipation of such increased patronage, hired Moore and the appellant, who were regularly engaged in the vicinity as coal miners, to assist him on Saturday night in waiting on his customers, in which they were each engaged at the time referred to. Each of them was armed with pistols and Alexander, the appellant, also had a billy in one of his hip pockets. The deceased, Neville Fitzhugh, was one of the fifty or sixty patrons in the establishment at the time he was shot by Moore. He and two companions were seated at a table and he purchased from appellant three bottles of beer for himself and his two companions and paid him the price therefor. Appellant proceeded to deposit the price in the cash register, and while he was doing so the deceased lifted the billy from his pocket and put it in his (deceased's) pocket, whereupon appellant requested deceased to return to him the billy, and they engaged in a more or less subdued conversation with reference thereto, but there is no proof of any demonstrated anger on the part of either of them.

Nevertheless, the somewhat boisterous crowd seems to have sensed some sort of brewing trouble and a considerable number of them began to gather around the

two; whereupon appellant drew his pistol and fired a shot in the floor some two feet away from where the deceased was standing, the two being then separated by only a distance of from four to six feet. At the time that shot was fired Moore (whom we have seen was also armed) was behind the counter to the rear of appellant and slightly to his left. Immediately following the shot of appellant in the floor, as described, Moore drew his pistol and shot deceased, from the effects of which he fell to the floor. Within a brief time (perhaps not more than a minute) he was picked up and placed upon a table, from whence he was soon taken to the home of his father where he was then staying, and from there to the hospital where, as we have said, he died the next morning. The grand jury of Muhlenberg County returned an indictment against Devine, Moore and appellant, in which they were jointly accused of murdering the deceased. At appellant's separate trial thereunder he was convicted and punished by life imprisonment in the state penitentiary. His motion for a new trial was overruled and from the verdict and judgment pronounced thereon he prosecutes this appeal.

The brief of his counsel filed in this court urges practically only one ground for reversing the judgment of conviction, and which is, that there was a total failure of proof that appellant rendered any guilty aid or in any manner abetted Moore in the latter's act of fatally shooting the deceased so as to render him amenable to punishment as an aider and abettor of Moore in that unlawful act. His guilt as an aider and abettor of Moore was submitted to the jury in an appropriate instruction, and which was proper; provided there was evidence sufficient to furnish a basis therefor, since one jointly indicted with another—both being accused as principals—may be convicted as an aider and abettor of the one whom the proof shows was the actual principal if the indictment names him as a principal whether he be joined in the indictment as such or not. Appellant's counsel concedes as much, but he argues that the proof heard at the trial utterly failed to furnish any factual foundation for the aider and abettor instruction, and, since there is no pretense by anyone that appellant fired the fatal shot so as to make him a principal, the aider and abettor instruction given by the court should not have been given, but on the contrary a directed ac-

quittal should have been given. No other ground for reversal is presented on this appeal.

As so presented we are confronted with the sole task of determining whether or not the proof heard at the trial was sufficient in law to base a finding by the jury of appellant's guilt as an aider and abettor of Moore. If that question should be answered in the affirmative it is then conceded that the judgment would have to be affirmed; but if the question should be answered in the negative, then it necessarily follows that the contention of counsel is correct, although his client may have committed at the time some sort of infraction of the criminal law, but which was no degree of homicide for which appellant was accused and being tried.

We have already stated substantially the correct history of how the killing occurred, and which is the manner described by defendant in his testimony. He furthermore testified that he barely knew the deceased and entertained no sort of ill will against him. He explained why he was armed with both a pistol and a billy, although the fact of his being armed is immaterial and has no bearing upon the fact of his guilt under the proof heard at the trial, of the crime charged in the indictment. However, he stated that he was aware of the character of the crowd that gathered at the place on Saturday nights and that it was his duty as he interpreted it, not only to serve his employer in waiting upon customers, but also to preserve order on the premises, and for which reason he was so armed. He furthermore stated that at the time he fired his shot in the floor he was not aware of the exact location of Moore with reference to himself, nor did he know or even suspect that Moore was going to shoot deceased, or entertained any thought of doing so, and that he (appellant) in no wise by look, gesture, deed or word, aided, assisted, encouraged, advised or approved the shooting of deceased by Moore, since he had no knowledge of the latter's intention to do so. He also testified that he himself had no intention whatever of wounding the deceased, much less killing him at the time he fired his shot into the floor, but that he did so only for the purpose we have hereinbefore stated, and which, of course, has no connection with the subsequent homicidal shooting of deceased by Moore, in the absence of some testimony link-

ing the two shootings as forming a part of a mutual understanding between appellant and Moore.

Every witness who testified in the case who witnessed the shots fired by both appellant and Moore substantially corroborate the testimony of appellant *as to the way and manner* they each fired their pistols. None of them testified to any fact or circumstance tending in any manner to connect appellant with Moore at the time the latter fired his fatal shot, except an alleged later remark made by appellant as testified to by some of the witnesses for the prosecution—but denied by him and by other witnesses—and to which we will later refer. The question, therefore, is, whether or not the testimony, as so developed, is sufficient to authorize the conviction of appellant as an aider and abettor in the commission of the crime for which he was being tried? The correct answer is governed by the proper determination as to the essentials necessary to make one an aider and abettor.

The subject is most thoroughly treated by the author of Roberson's New Kentucky Criminal Law and Procedure in its chapter VII, beginning on page 263, Section 181, and extending to page 301, Section 209, of that work. The subject matter of the chapter is "Parties to Crimes," in which the author treats all degrees of guilt, accessories before and after the fact, conspirators, and aiders and abettors. The latter class (aiders and abettors) are discussed in Sections 184a, to and including 187a of the author's work, but for the purposes of this case we deem it necessary to refer only to Sections 184a and 184, wherein the author quotes from and approves the definition of an aider and abettor given by us in the case of Smiddy v. Commonwealth, 210 Ky. 359, 275 S. W. 872, 873, in which we said: "To constitute one an aider or abettor in the commission of a crime he must be actually or constructively present when it is committed and participate in its commission by some act, word, deed, or gesture. It is not essential that there should be a prearranged agreement between him and his co-defendants, but it is necessary that one charged with aiding and abetting be guilty either of some overt act or advocacy or encouragement of his principal in some way in the commission of the unlawful act." Continuing in the same section the author approves what we said in the case of Lyons v. Common-

wealth, 216 Ky. 202, 287 S. W. 534, to this effect: "It is necessary that he should aid either at the time of or before the commission of the offense by the other, * * *. He cannot become an aider and abettor by injecting himself into the situation after the crime has been committed by another * * *; and if he does so and is himself guilty of any infraction of the law thereafter, he is punishable for such infraction, but not because he has aided and abetted the other in the commission of a crime already committed."

In the following section (185) it is said, in substance—not quoting the text verbatim—that in order to render one guilty as an aider and abettor there must exist between him and the principal a community of unlawful purpose or intent at the time the crime is committed, since an aider or abettor "is a partner in the crime, the chief ingredient of which is always *intent*." (Our emphasis.) He then asserts that there can be no such relationship or partnership in the commission of the crime "where there is no community of purpose or intent," and that to render one guilty as an aider and abettor he "must share the intent or purpose of the principal." The earlier domestic case of Landrum v. Commonwealth, 123 Ky. 472, 96 S. W. 587, 29 Ky. Law Rep. 924, and others quoted therein, are in complete accord with the text of Mr. Roberson, and which cases are cited in his notes thereto. The essentials necessary to convict one as an aider and abettor, as so outlined, were so stated, approved and followed by us in the later cases of Whitt v. Commonwealth, 221 Ky. 490, 298 S. W. 1101; Gill v. Commonwealth, 235 Ky. 351, 31 S. W. (2d) 608; Turner v. Commonwealth, 268 Ky. 311, 104 S. W. (2d) 1085, and others cited in those opinions, together with still others rendered since the last one referred to. In fact there is no disent from such approved requirements in any opinion rendered by this court up to the present time so far as we have been able to discover—all of which are in complete accord with the ripened definitions given by standard text writers on the criminal law.

Such fundamental definition is necessarily based upon the fact that an aider and abettor is one who helps another to commit an act with the intention and purpose of rendering such help to him and with the knowledge on his part (implied or actual) that the one whom he

aids and helps contemplates the commission of the act, the doing of which the aider and abettor not only consents to but also encourages, councils or assists in the doing of it. The aider and abettor must be either actually or constructively present at the time, and which element appeared in this case; but mere presence alone without any sort of participation in the unlawful act by the principal is not itself sufficient to create guilt on the part of the alleged aider and abettor. We are, therefore, driven to the conclusion that under the testimony as thus far discussed it failed to sufficiently connect the appellant with the fatal shooting of the deceased by Moore, the principal, to render appellant punishable as an aider and abettor in bringing about the unlawful killing of deceased by Moore.

But it is insisted that because some of the witnesses testified that appellant immediately after the deceased fell upon the floor following his wounding by Moore, forbade his removal and threatened harm to anyone who attempted to move him he thereby in some manner approved the shooting of deceased by Moore so as to render him guilty as an aider and abettor of Moore; but even if it was true (though contradicted by a number of witnesses) that appellant was guilty of the acts charged against him, following the fatal shooting of the deceased, yet they were insufficient to create guilt on his part as an aider and abettor of Moore as declared by us in a number of cases, the latest of which are the Turner and Lyons cases, supra, in the first of which we said [104 S. W. (2d) 1085, 1086]: "Such testimony [of acts and words of the alleged aider and abettor after the commission of the offense, not amounting to an admission] is no evidence that before or at the time of the killing he [appellant on trial] aided or abetted in any manner his brother in the shooting and killing of the deceased." Because of that fact we directed in that case a peremptory instruction of acquittal on another trial if the evidence was substantially the same as on the first one. The reason underlying that conclusion as expressed in all the cases is that the intent to aid and abet, or assist the principal in any guilty manner must exist at the time or prior to the commission of the offense by the principal. Therefore, the subsequent and later declarations or acts of the defendant on trial are immaterial, unless, perhaps, they are of such a nature

as tends to establish the necessary existence of the intent of the alleged aider and abettor, and which was entertained by him at the time his principal committed the offense. Having arrived at that conclusion it necessarily follows that the court erred in giving the aiding and abetting instruction and in overruling appellant's motion for a peremptory instruction of acquittal.

Wherefore, the judgment is reversed, with directions to set it aside, and for proceedings not inconsistent with this opinion; the whole Court sitting, except Judge Perry, who was absent.