**Garfield HENSLEY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 24, 1955.

J. B. Campbell, Barbourville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STEWART, Chief Justice.

John Henry Hensley and Garfield Hensley were jointly indicted by the Knox County grand jury for the wilful murder of James Gray. The second count of the indictment alleged a conspiracy to commit the same crime. John Henry entered a plea of guilty and the jury fixed his punishment at confinement in the penitentiary for life. Garfield, seventeen years of age, pleaded not guilty, was convicted of voluntary manslaughter and given twenty-one years. From this judgment he appeals.

Appellant's principal contention for reversal is that the lower court should have peremptorily instructed the jury to find for him because the evidence was insufficient to sustain a verdict. Two other errors are assigned and we shall dispose of them during the course of the opinion.

The killing of Gray, eighteen years of age, occurred on the night of February 6, 1954, near the home of John Martin Jackson, in whose residence church services were being conducted on the occasion. The evidence of three witnesses who testified for the Commonwealth was to the effect that Gray came to the Jackson home the night he was slain, walked into the kitchen where the Hensley boys were conversing with two girls and transferred the attention of the girls to himself when he began to show then some pictures he had in his wallet. This action upon the part of Gray infuriated the other two boys, an argument ensued and John Henry, wanting to fight, invited Gray outside the house. Gray told John Henry to leave him alone or he would slap him across the room. Gray was then called upon to back up this statement, but he replied that he didn't come to church to fight.

After the services were over Gray departed with the two girls, one of whom was holding his coat which he had removed while indoors. As Gray stopped to get into his coat by a culvert, some 140 feet from the Jackson home, he was approached by the Hensley boys and one of them inquired why

he was putting his coat on. He retorted that he did not want to fight around the church but that he would meet John Henry later and "learn him a lesson." John Henry then rushed up and stabbed Gray. The wound proved to be fatal. Garfield, who had been standing some 15 or 20 feet away, ran up and started to strike Gray, but John Henry said: "Don't hit him no more, one good stab is enough for him." John Henry had been seen in the kitchen with a white-handled knife and the glistening flash of the knife blade was observed as John Henry started to stab Gray. Such a knife was found on the ground the next day at the scene of the crime.

Jim Paul Carnes and Virgil Hobbs, both of whom were witnesses for the Commonwealth and who were apparently with the Hensley boys while they waited for Gray to leave the Jackson house, testified they heard a conversation between them in which they planned to assault Gray and push him over a bank nearby.

Garfield, testifying in his own behalf, admitted he was at the Jackson home with his brother on the night Gray was killed. However, he denied talking to or quarreling with Gray in the kitchen, and he disavowed having any part in the stabbing of Gray later on, declaring he was on the porch of the Jackson residence, some 140 feet distant, when the fatal stroke was dealt. His brother, John Henry, a witness appearing in behalf of Garfield, corroborated Garfield's testimony, John Henry asserting he was solely to blame for the death of Gray.

■ The lower court in the first charge instructed the jury to find John Henry guilty and fix his punishment at death or life imprisonment, he having entered a plea of guilty, as already mentioned, to the charge of wilful murder; and, in the second charge, the question of Garfield's guilt as an aider or abettor of John Henry was submitted. The jury's verdict was based upon the latter instruction.

Although Garfield was indicted for wilful murder as a principal with no accusation that he was an aider and abettor, it was nevertheless proper for the lower court to give the second instruction. An aider and abettor is one who was actually or constructively present when the offense was committed and who participated in its commission by some act, word, deed or gesture. It is necessary that one charged with aiding and abetting in the murder of another be guilty of some overt act or advocacy or encouragement of his principal who does the actual killing. See Hartman v. Commonwealth, Ky., —— S.W.2d ——; Turner v. Commonwealth, 268 Ky. 311, 104 S.W.2d 1085; Smiddy v. Commonwealth, 210 Ky. 359, 275 S.W. 872. Where two or more are jointly indicted, charged as principals in the commission of a crime, nothing being said as to aiding and abetting, as in this case, if the evidence discloses that one of them was the chief perpetrator, the other or others being present aiding and abetting, an instruction authorizing their conviction for aiding and abetting is correct, since they are all regarded as principals. Deaton v. Commonwealth, 211 Ky. 651, 277 S.W. 1001. We also believe the evidence warranted the giving of a conspiracy instruction, but the failure to do so was beneficial to Garfield and, as a consequence, he cannot complain.

■ In the instant case there was evidence that John Henry and Garfield, inflamed by anger, schemed to vent their wrath upon Gray by assaulting him and throwing him over a bank. Garfield was in the company of his brother from the time the trouble flared up in the kitchen until the death-dealing blow was struck. Garfield started to strike Gray himself but desisted after being instructed by his brother not to do so. Afterwards he and his brother fled from the scene of the crime together. We conclude there was sufficient proof to sustain a conviction of Garfield as an aider and abettor of his brother.

■ A motion was made by Garfield at the close of all the evidence that he be turn-

ed over to the Youth Authority because of his age. This motion was overruled and we think properly so. When Garfield was first brought before the Knox county judge in juvenile court, the latter transferred the case to the Knox county grand jury, which KRS 208.170(1) permits to be done. This section specifically provides for such procedure where a child is "sixteen years of age or older" and has committed a felony. The grand jury then indicted in the manner heretofore described, although in conformity with KRS 208.170 (2) (a) it could have returned a written report to the circuit court recommending Garfield's commitment to the Youth Authority. The circuit judge still could have elected to turn Garfield over to the Youth Authority, but in his discretion, pursuant to the provisions of KRS 208.170(2) (c), he decided to try Garfield as any other defendant. The judgment entered on the verdict provided that Garfield be placed in the care, custody and control of the Youth Authority, there to remain until he reaches his twenty-first birthday, at which time he will be taken to a state penitentiary to serve the remainder of his time. See KRS 208.180(1). A meticulously correct course in the handling of this case was pursued throughout. In fact, Garfield's motion was fully complied with.

The final complaint is that two of the men on the grand jury who rendered the indictment against Garfield were not listed on the last returned county tax commissioner's records. See KRS 20.050, 29.070. This objection was not raised at the trial and was advanced for the first time in the motion and grounds for a new trial; hence we must hold it came too late and was therefore waived. Titsworth v. Commonwealth, 299 Ky. 814, 184 S.W.2d 228; Parker v. Commonwealth, 298 Ky. 204, 182 S.W.2d 653.

Wherefore, being of the opinion Garfield received a fair and impartial trial, the judgment is affirmed.