**Marvin Isaac CHURCH, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 3, 1966.

Rehearing Denied March 3, 1967.

Frank E. Haddad, Jr., Louisville, for appellant.

Robert Matthews, Atty. Gen., Harold T. Hotopp, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Having been convicted of aiding and abetting another in armed robbery and sentenced to imprisonment for life pursuant to a jury's verdict, the appellant asserts: (1) that he should have had a directed verdict of acquittal, and (2) that prejudicial error was committed in refusing to suppress evidence obtained from appellant after his arrest without a warrant.

Just before midnight, July 23, 1964, a lone man, held up and robbed at gun-point the manager of the Arch Club Packaged Liquor Store in Louisville. (For purposes of this opinion, all of the evidence reflects that the robber was not the present appellant, Church, but his co-defendant, Hardy).[1]

1. Although it will be assumed in this opinion that Hardy was the robber, nothing herein shall be deemed to be authoritative as to the guilt or innocence of Hardy as that question may be presented in any proceeding.

Within a couple of minutes after Hardy had seized about $380–$385 and left the store, the manager called the Louisville Police Department and reported the crime. He gave a general description of Hardy, including the manner in which he was dressed, although at that time Hardy's identity was not known to the manager.

Lieutenant Leslie of the Louisville Police Department testified that while in the regular course of his police duties he learned via his police-car radio, from the police radio dispatcher, that a holdup had just occurred in the area of the Arch Club Liquor Store. The radio order was for a "uniform" police car to go to that store for immediate police attention. The officer proceeded to the store in response to the dispatch, and while en route the radio dispatcher gave further information, including a physical description of the holdup man, and that " * * * they were believed to be seen leaving in a '55 Plymouth." The officer related that the "radio man put a pickup for a '55 bluish green Plymouth leaving the scene of the robbery."

The officer interviewed the victim of the robbery and obtained further details of the description of Hardy, along with the information that Hardy had used a "large chrome revolver with a 4-inch barrel" in the holdup. At about 1:30 a. m. (about 1½ hours after receiving the initial radio dispatch) this officer observed an automobile parked in the parking lot of a different liquor store. The officer placed the suspected car under observation, and noted that the car "pulled away and came back two times." Then, as tersely put by the officer: "The third time it came back I assumed that it was the holdup car."

The officer then described a chase of the suspected car, during the frenzied course of which the officer observed the appellant driving the fleeing Plymouth, accompanied by Hardy. The officer saw a revolver as it was thrown from the right side of the appellant's car, and later retrieved it. The revolver was described as looking "just like" the one used in the robbery.

Meanwhile, other police cars had joined the pursuit. Officer Leslie temporarily "lost" the quarry due to heavy dust, but another police car confronted the appellant's car in such a way that the officers supposed they had successfully blocked its further passage; but when they undertook to approach it, the appellant's car was hurriedly driven away. Shortly the appellant's car crashed into the rear of a truck; the officers were still in pursuit, having fired some shots in an effort to halt the flight. When they arrived at the accident site they found the appellant's car, but the appellant and Hardy had fled. However, the officers located appellant hiding in some bushes nearby, and placed him under arrest.

An officer testified that appellant admitted that he had been at the scene of the robbery, and offered to take police officers to the "other man" involved, but would not reveal the name of that man. Very shortly thereafter, the appellant withdrew his offer to take the officers to the other person involved. A search of appellant's person incident to the arrest disclosed that he had currency amounting to $196 plus some silver. Appellant did not give any written statement, nor did the prosecution introduce any other statement made by him to the officers.

Appellant testified in his own behalf, and explained that he had been with Hardy since about nine o'clock on the night of the robbery. The two men had spent this time in various places drinking alcoholic beverages. In his own language, the appellant stated his version of the robbery:

"Then we come back and hit a couple more places and drank some more. I do not remember exactly what time it was then, but, anyway we were going to get another bottle—

Q 15. (interrupting) Where did you go?

A. To the Arch Club Liquor Store, I did business there. And he went in to get a bottle, I sent him after a bottle, and in just a few minutes he come running out with a gun in his hand and told me to get out of there.

Q 16. Did you plan to rob that place with him?

A. No."

According to appellant's version, the first inkling he had of any robbery was when Hardy dashed from the liquor store with gun in hand. He explained that his subsequent actions in seeking to avoid being overtaken by the police cars were prompted by his having become frightened. He accounted for the money in his possession by saying thaat he had saved it with a view to buying a car. In this he was corroborated by his landlady.

The appellant strenuously argues that the foregoing state of facts fails to support a verdict against appellant as an aider and abettor of Hardy. He reasons that since an aider and abettor must share the criminal intent and purpose of the principal, the evidence falls short of establishing that vital element.

▬▬ Appellant's argument overlooks the fact that the issue as to whether Hardy acted "on his own," or whether the appellant was indeed an aider and abettor may be submitted to the jury upon circumstantial evidence. See McQueen v. Commonwealth, Ky., 393 S.W.2d 787, 792–793, in which we pointed out that a directed verdict of acquittal (urged on substantially the same grounds presented here) was correctly denied because of the incriminating circumstantial evidence. Neither the court nor the jury was bound to believe appellant's version, in face of the numerous actions of appellant which support the reasonable inference that appellant was a "full partner" in the entire criminal transaction. We re-

gard the factual situation, which we have stated in detail, as fully warranting the submission of the issue as to whether appellant was an aider and abettor, and as abundantly sufficient to support the verdict.

Turning to the question whether the evidence obtained incident to the arrest of appellant should have been suppressed, we must look to decisions of the Supreme Court in light of Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933. In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, evidence obtained upon a warrantless arrest was held to have been properly admitted. The basis of the decision is that the arresting federal officers had "probable cause" to believe the arrested person had committed a felony within the meaning of the Fourth Amendment, U.S. Constitution. The "probable cause" there rested on information furnished by a "reliable paid informer."

In analyzing the meaning of "probable cause" as a basis for a warrantless arrest on a felony charge, the following language found in the Draper opinion is pertinent:

" 'In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, 338 U.S. [160] at page 175, 69 S.Ct. [1302] at page 1310 [93 L.Ed. 1879]. Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543, 555, 39 A.L.R. 790]." Ibid., 79 S.Ct. at 333, 3 L.Ed.2d at 332.

**312**

In Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, the Supreme Court reversed a conviction had in the Ohio court, on the basis that the arresting officer did not disclose the source of any reliable information upon which he acted. In Beck the Supreme Court observed that its facts did not bring it within the ambit of Draper, but the court did recognize the Draper rule, which it epitomized in these words:

> "But in that case [Draper] the record showed that a named special employee of narcotics agents who had on numerous occasions given reliable information had told the arresting officer that the defendant, whom he described minutely, had taken up residence at a stated address and was selling narcotics to addicts in Denver. The informer further had told the officer that the defendant was going to Chicago to obtain narcotics and would be returning to Denver on one of two trains from Chicago, which event in fact took place." Ibid, 85 S.Ct. at 227, 13 L.Ed.2d at 147.

We have no difficulty in concluding that the police officer in the case at bar had the right—indeed the imperative duty—to act upon the official information transmitted to him in normal course of police administration by the radio dispatcher. When that radio information was supplemented by information obtained from the robbery victim, and then confirmed by the abnormal and suspicious movements of the appellant and Hardy, we think it would be inconceivable to suggest that the officer lacked "probable cause."

There is no inconsistency in our holding here and our decision in Scamahorne v. Commonwealth, Ky., 376 S.W.2d 686. In Scamahorne we held that a search incident to an arrest *with* a warrant was improper, because the affidavit upon which the warrant was issued failed to state facts sufficient to reflect that the affiant had probable cause to make the averments of the af-

fidavit. In Scamahorne we noted and stated the rule to be:

> "The arresting officer in felony cases must act upon facts within his own knowledge, or upon reliable information communicated to him by a third person. Mere belief or suspicion does not constitute reasonable grounds." Ibid, 376 S.W.2d at 687.

In our view, it is clear that the officer in the case at bar acted upon reliable information furnished to him by a third person, coupled with his personally gained knowledge. This was more than "mere belief or suspicion." It was enough.

The judgment is affirmed.