Lawrence Gene SMITH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Charles C. WILFORD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 3, 1971.

Patrick H. Molloy, Brooks, Sullivan & Molloy, Lexington, for Lawrence Gene Smith.

Spencer D. Noe, Thomas E. Harris, Lexington, for Charles C. Wilford.

John B. Breckinridge, Atty. Gen., Laura L. Murrell, Asst. Atty. Gen., Frankfort, of Commonwealth of Kentucky.

DAVIS, Commissioner.

Lawrence Gene Smith, Charles C. Wilford, and Thomas James Dixon were indicted and tried jointly upon various offenses to be discussed in the opinion. Smith and Wilford have prosecuted separate appeals, utilizing the same record. Dixon has not taken an appeal so far as appears of record. The separate appeals of Smith and Wilford will be dealt with in this opinion.

On the night of July 1, 1969, at about 9:45 p. m., Smith and Wilford, who were lawfully incarcerated in the Fayette County Jail, attacked Deputy Jailer Harold Black. Both Smith and Wilford had "switchblade" knives. Smith was the one who seized Black and held the knife to Black's throat. Black was cut during this assault, so that three stitches were required to suture the wound.

Smith and Wilford forced Black to accompany them on the elevator to the jail's third floor, where they located and released Dixon, who also was lawfully imprisoned in the jail. Smith and Wilford continued to threaten Black's life, but Dixon dissuaded them from murdering Black, pointing out that they would need Black to enable them to get out of the jail.

The three prisoners forced Black to accompany them down the stairs to the outer door on the first floor, where they compelled Black to summon the outside guard by ringing a bell provided for that purpose. When the outside guard opened the door in response to the bell, the three prisoners forced their way past him and escaped into the night.

The escaped prisoners next surfaced about 1:45 a. m. the following morning, July 2, 1969, at the isolated studio of Radio Station WVLK, situated about eight miles from Lexington just off the Leestown Pike. The only person on duty was an announcer, Thomas Kindall, who was in the process of broadcasting when Dixon and Wilford entered the studio. Dixon, knife in hand, struck Kindall in the face with his fist. Then, with the knife at Kindall's throat, Dixon demanded and obtained the keys to Kindall's car and his billfold.

He took the cash from the billfold, only $2, and the keys. Then he forced Kindall outside where he forcibly bashed him into the post of a rail fence, leaving him for dead, after removing Kindall's wristwatch. Wilford was standing in the studio door, also armed with a knife, as Dixon assaulted and robbed Kindall.

At the trial Kindall testified that he saw Smith sitting in Kindall's parked car when Dixon and Wilford forcibly brought Kindall from the studio. There was some doubt cast upon this evidence, as will appear.

Kindall feigned unconsciousness, believing that he would be killed unless he did so. The three prisoners drove away in Kindall's automobile, after which he notified the police. Shortly after 2 a. m., Frankfort police officers arrested the three escapees as they sat in Kindall's car, awaiting a "green light" at the intersection of U. S. Highway 60 and 460, in east Frankfort. Wilford was at the driver's wheel, with Smith seated on the right front seat and Dixon in the right rear seat. An ordinary pocket knife was found in Wilford's pocket; a switchblade knife was found, with blade open, in the middle of the front seat. Two one-dollar bills were found in Smith's possession. It was not until some time later that Kindall's wristwatch was found in the Fayette County Jail, apparently smuggled there by Dixon. As a matter of record, it appears that the same three men, with ten others, escaped again from the Fayette County Jail in early September 1969. Dixon was the last of the original three (Dixon, Smith, and Wilford) to be apprehended.

This brings us to consideration of Smith's separate appeal in which he assigns three charges of error: (1) The court should have granted him a change of venue; (2) a directed verdict of acquittal as to armed robbery should have been granted Smith; and (3) the verdict finding Smith guilty as an aider and abettor of armed robbery is not supported by the evidence.

■ The trial court conducted a pretrial hearing concerning the motion for change of venue. Newspaper articles were presented, as was evidence concerning radio and television news accounts. Witnesses testified, pro and con. The trial judge denied the motion for change of venue, but pointed out that care would be taken in voir-dire examination of prospective jurors so that persons who had become acquainted with adverse pretrial publicity would not become members of the jury. The record discloses that extensive voir-dire proceedings were had and that a jury was seated whose members professed on oath their ability to try the issues solely on the law and evidence adduced in court. A review of the record convinces the court that the trial judge properly exercised his discretion in denying the requested change of venue. No distinguishing factor appears in this record from the factors which obtained in Garr v. Commonwealth, Ky., 463 S.W.2d 109, and Hurley v. Commonwealth, Ky., 451 S.W.2d 838, in each of which this court upheld the trial court's denial of a motion for change of venue.

■ Although Smith had been indicted jointly with Dixon and Wilford on the charge of armed robbery, on the basis of the criminal activities against Kindall, the trial court declined to instruct on that charge as to Smith's being a principal. However, the court gave instructions authorizing the jury to find Smith guilty of aiding and abetting Dixon and Wilford in the armed robbery of Kindall. Kindall testified on direct examination that Smith was seated in Kindall's car when Dixon and Wilford brought Kindall out of doors. On cross-examination Kindall acknowledged his former testimony, given upon an examining trial, that he could not identify the person he saw sitting in his car. Kindall explained that his positive identification at trial "may have been assuming" by him. However, he stated at the trial that he had first thought the person sitting in his car was a female, on account of the hair style. Other evidence disclosed that

Smith's hair was in bushy, Afro-style at the time. Dixon and Wilford testified that Smith separated from them before they entered the radio studio and was picked up by them after they had stolen Kindall's car and driven it along the road a piece. Smith did not testify.

The three men broke jail together. They were apprehended together, in the stolen automobile, only a few minutes after the car's owner saw someone sitting in it. Dixon and Wilford did not undertake to explain that some other person had fleetingly joined their little group, only to disappear into the night. In short, the jury did not have to believe the version presented by Dixon and Wilford, but had strong basis for disbelieving it. There is no merit in the second assignment of error.

■ The third assignment of error is equally unavailing. The court instructed the jury that it must believe from the evidence to the exclusion of a reasonable doubt that Smith was present and near enough to, and did, aid, assist, abet, advise, counsel, or command Dixon and Wilford, either or both, in the armed robbery of Kindall before it could find him guilty as an aider or abettor. This was appropriate. Cf. Alexander v. Commonwealth, 285 Ky. 233, 147 S.W.2d 401, in which it was held that the evidence was insufficient to support a conviction as an aider and abettor, and Church v. Commonwealth, Ky., 411 S.W.2d 309, in which the evidence was deemed sufficient to support a guilty verdict. It seems too plain for debate that the total circumstances were sufficient to warrant a jury's finding that the obtention of the car and some money were integral parts of the concerted effort of the three men to effect their escape. Smith's presence in the car, as a lookout and sentry, constituted aid in the commission of the crime.

The judgment as to Lawrence Gene Smith in the appeal numbered F–8–70 is affirmed.

Wilford presents four grounds of alleged error: (1) The court erred in denying a severance; (2) improper evidence was admitted; (3) the court erroneously required the opening statements of counsel for the three defendants to be made in series; and (4) a directed verdict should have been given for Wilford as to malicious cutting and wounding, and as to the armed-robbery charge.

■ Wilford asserts that the trial court erroneously denied his motion for separate trial, citing Underwood v. Commonwealth, Ky., 390 S.W.2d 635; Hardin v. Commonwealth, Ky., 437 S.W.2d 931; and 21 Am. Jur.2d, Criminal Law, Section 356, page 383. None of the authorities cited lends support to Wilford's contention, since there is no showing of antagonistic defenses or any other circumstance which could be regarded as prejudicial to Wilford's right to a fair trial. The joinder of offenses in the indictment was proper. RCr 6.18. Joinder of defendants was appropriate. RCr 6.20. There was no showing before trial or during the proceedings that separate trials were required as prescribed by RCr 9.16. The trial court did not abuse its discretion in denying the motion for severance. Boggs v. Commonwealth, Ky., 424 S.W.2d 806.

The Commonwealth announced on February 17, 1970, that it was ready to proceed to trial without absent witness Harold Black. Dixon objected, so the trial judge granted a continuance for a week. Black appeared at the postponed trial. Wilford points to this as a ground supporting his argument for a separate trial. Yet, Wilford proclaimed to the trial court that he was not ready and he sought a continuance. The court does not regard this circumstance as demonstrative of "antagonistic defenses."

■ Wilford complains that the trial court permitted witness Kindall to detail some of the physical results of the beating he sustained during the robbery. Kindall related that a few hours after the affair,

when he blew his nose his "eye popped out." This evidence was received in support of that portion of the indictment which charged Dixon, only, with striking, etc., of Kindall with intent to kill him. Under the authority of Claypoole v. Commonwealth, Ky., 337 S.W.2d 30, it was proper to receive evidence of the extent of Kindall's injuries, since that was relevant to the issue of Dixon's intent to kill him. There was no extension of the testimony as was true in Claypoole. Wilford was not on trial for that crime, so it was unnecessary for the court to admonish the jury, nor did the evidence have prejudicial effect. It was competent. It related to an event which occurred in a series of events with which Wilford was acting in concert with his two codefendants.

■ When the Commonwealth closed its case, the trial judge directed that the lawyer for each defendant proceed to make an opening statement or be foreclosed from making such a statement. It had previously been directed that the order of proof as to the defendants would be alphabetical, i. e., Dixon, Smith, and Wilford. Wilford's counsel maintains that the court should have heard the opening statement from Dixon's counsel, followed by whatever evidence Dixon offered, then an opening statement from Smith's counsel, followed by Smith's evidence, and then the opening statement and evidence for Wilford. RCr 9.42 prescribes the order of proceeding in criminal trials. The method urged by Wilford is not prescribed or required by the rule. There appears to be no fundamental reason for such procedure as is urged by Wilford. The court properly denied Wilford's motion to have such an order of proceedings.

■ Finally, Wilford asserts that there was insufficient evidence to submit an issue to the jury as to his guilt on the charges of malicious cutting and wounding of Black and on the armed-robbery charge as to Kindall. The basis for these contentions appears to rest on the claim that Wilford's

knife did not cut Black and Wilford's knife or fist did not touch Kindall. But Wilford was shown to be present at both events, armed and participating. The mere fact that the thrust of the knife or fist was not his does not absolve him in these circumstances. It has been said: "When two or more persons unite to accomplish a criminal object, whether through the physical volition of one, or of all, proceeding severally or collectively, each individual whose will contributes to the wrongdoing is in law responsible for the whole the same as if performed by himself alone." Roberson's New Criminal Law, Section 181; Waggner v. Commonwealth, 298 Ky. 153, 182 S.W.2d 661; Philpot v. Commonwealth, 240 Ky. 289, 42 S.W.2d 317. The appellant Wilford falls within the ambit of that rule, as a principal.

The judgment on the appeal of Charles C. Wilford, bearing Number W–164–71, is affirmed.

The judgment is affirmed in each of the appeals.

All concur.